THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JAMES R. PORRETTA, Defendant-Appellee.

Second District   No. 2—83—0759

Opinion filed September 18, 1984.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, of counsel), for the People.

Anthony M. Montemurro, of DiNatale & Montemurro, of Oak Park, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

The State appeals a finding of "no probable cause" by the trial court in an "implied-consent" hearing held pursuant to section 11—501.1(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1(c)) following the arrest of defendant, James R. Porretta, for driving while under the influence of alcohol (DUI) under a city of Naperville ordinance.

The issue on appeal is whether, upon the trial court's finding that defendant was incapable of refusing to take a breathalyzer test, the court erred in further determining that the State then should have administered a blood test and, on the State's failure to conduct such a blood test, finding the State did not comply with the "implied-consent" procedures under the statute.

On February 2, 1983, defendant was arrested and charged with DUI under a city of Naperville ordinance. The arresting officer, William Zittnan, subsequently filed his sworn statement with the clerk of the circuit court that defendant refused to take a test requested in accordance with section 11—501.1 of the Illinois Vehicle Code and set forth the grounds upon which he based probable cause to arrest defendant for DUI. Defendant filed a request for a hearing.

The substance of Officer Zittnan's testimony at the hearing was that while he was on patrol his attention had been called to defendant's vehicle by a witness; that he then observed the vehicle make a left-hand turn and drive off the roadway; that defendant was the driver; that he arrested defendant for DUI after observing an odor of alcohol, defendant's general attitude, and defendant's inability to perform certain field tests; that at the station he requested the defendant take a breathalyzer test and defendant refused; that during his questioning of defendant to complete his report the defendant became unconscious and passed out; that defendant for a short period of time was awake and then would fall back asleep; that defendant also passed out as he tried to telephone his attorney; and that he never asked defendant to give samples of his blood or urine.

Defendant testified that he did not "recall" Officer Zittnan asking him to take a breathalyzer test; that he called his attorney but was unable to talk to him because he fell asleep; that at the station he was awake "for a little bit" and then was "comatose for a while"; and that he called his wife, who came and picked him up.

The trial court determined that a recent amendment to the Illinois Vehicle Code provided that a person in a condition rendering him incapable of refusing a test requested to determine alcohol content was deemed not to have withdrawn consent to such test as provided under the "implied-consent" statute. However, the court below stated that "[i]f a police officer has a comatose person as a result of alcohol, they [*sic*] may take him to the hospital and take the blood test." The court then found that defendant was incapable of making a refusal of the test, that no blood test was taken, and that, therefore, there was "no probable cause" under the "implied-consent" statute.

The "implied-consent" hearing is a civil proceeding, and an adverse final judgment is appealable by the State in the same manner as other civil proceedings. (*People v. Horberg* (1984), 123 Ill. App. 3d 456, 457, 462 N.E.2d 831.) The Illinois Vehicle Code's "implied-consent" law provides, *inter alia*:

"(a) Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent, subject to the provisions of Section 11—501.2, to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol, other drug, or combination thereof content of such person's blood if arrested, as evidenced by the issuance of a Uniform Traffic Ticket, for any offense as defined in Section 11—501 or a similar provision of a local ordinance. The test or tests shall be administered at the direction of the arresting officer. The law enforcement agency employing said officer shall designate which of the aforesaid tests shall be administered by their enforcement personnel.

(b) Any person who is dead, unconscious or who is otherwise in a condition rendering such person incapable of refusal shall be deemed not to have withdrawn the consent provided by paragraph (a) of this Section and the test or tests may be administered, subject to the provisions of Section 11—501.2." (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1(a),(b).)

Pursuant to subsection (c) of section 11—501.1, the statute further provides for suspension of a person's license to operate a motor vehicle who refuses to submit to a test after being requested to submit to a test by a law enforcement officer. A person may request a hearing

upon being notified of a suspension for his refusal to take the test, and the scope of the hearing is limited to the issues whether defendant was arrested for driving while under the influence of intoxicating liquors; whether the officer had reasonable grounds to believe defendant was driving while under the influence; and whether defendant refused to submit and complete the test upon request. Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1(c); see *People v. Malloy* (1979), 76 Ill. 2d 513, 517, 395 N.E.2d 381; *People v. Horberg* (1984), 123 Ill. App. 3d 456, 459, 462 N.E.2d 831.

While the State first contends that the trial court's finding that defendant was incapable of making a refusal to take the test was against the manifest weight of the evidence, we need not consider that argument, as we conclude the trial court misapplied the applicable law and its decision must be reversed as a matter of law. Nor do we deem meritorious defendant's contention that the trial judge also found Officer Zittnan never advised defendant of his duty to submit to the test. The court below made no such finding, and the record does not support defendant's argument.

The trial court correctly concluded that a recent amendment of the "implied-consent" statute was applicable to this case. In pertinent part, this amendment now provides:

> "(b) Any person who is dead, unconscious or who is otherwise in a condition rendering such person incapable of refusal, shall be deemed not to have withdrawn the consent provided by paragraph (a) of this Section and the test or tests may be administered, subject to the provisions of Section 11—501.2." (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1(b).)

Formerly, the statute had provided just the opposite—that any person who was unconscious or who was otherwise in a condition rendering him incapable of refusal, shall be deemed to have withdrawn his consent. (See Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1(e).) Accordingly, the law now, as applied to this case, is that defendant's condition, which the trial court found made him incapable of refusing the test, is not a withdrawal of the consent, statutorily imposed upon drivers of motor vehicles in this State, to a test to determine the alcohol content of his blood. See *People v. Solzak* (1984), 126 Ill. App. 3d 119.

In spite of this clear legislative mandate, the court below, *sua sponte*, engrafted into this amendment a requirement that if a person was incapable of refusing the test, that the offer of a breathalyzer test, as requested here, was insufficient and he must be taken to a hospital for a blood test—apparently to be administered involuntarily. This analysis is not only faulty, but is inconsistent with the language of the stat-

ute, as amended.

Subsection (a) of section 11—501.1 provides for "implied-consent" to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol or drug content of a person's blood. It further expressly states that the law enforcement agency employing the arresting officer "shall designate which of the aforesaid tests shall be administered by their enforcement personnel." (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1(a).) The only testimony on this point here is that defendant was asked to take a "breathalyzer" test by Officer Zittnan. Without any evidence to the contrary, it is evident that the breathalyzer test was the type of test authorized by the city of Naperville. Thus, under subsection (a) of section 11—501.1, the arresting officer's law enforcement agency may choose the type of test to be administered, and there is no requirement, contrary to the trial court's interpretation, that another type of test be given if a person is incapable of refusing the type of test requested by the arresting officer. Recently, the appellate court in *People v. Kiss* (1984), 122 Ill. App. 3d 1056, 462 N.E.2d 546, held that a refusal to submit to a breathalyzer test upon request by an officer was a refusal under the "implied-consent" statute and the defendant was not entitled to choose which test should be administered among the types of blood-alcohol tests authorized by statute.

Our State, as most States have done, has adopted an "implied-consent" statute to assist in determining whether motor vehicle drivers suspected of intoxication are in fact under the influence of alcohol. (*People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 139, 461 N.E.2d 410.) This statute should be liberally construed to accomplish its obvious purpose: to protect the citizens of this State upon the highways. (*People v. Horberg* (1984), 123 Ill. App. 3d 456, 459, 462 N.E.2d 831.) We doubt whether the legislative purpose of the "implied-consent" statute would be properly served by permitting an operator of a motor vehicle to retain his driving privileges because the arresting officer did not take him to a hospital for a blood test when he was too intoxicated to stay awake to make an intelligent decision to accept or refuse the breathalyzer test.

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed and remanded with directions to enter a finding of probable cause.

Reversed and remanded with directions.

LINDBERG and HOPF, JJ., concur.