THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HANS BANK, Defendant-Appellant.

Fifth District   No. 5—92—0559

Opinion filed October 13, 1993.

Lockwood & Speroni, P.C., of Marion, for appellant.

Charles Grace, State's Attorney, of Murphysboro (Norbert J. Goetten, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LEWIS delivered the opinion of the court:

Defendant, Hans Bank, appeals from the trial court's denial of his petition for rescission of his statutory summary suspension, alleging that the trial court's finding that his physical inability to perform the breathalyzer test was tantamount to a refusal was against the manifest weight of the evidence, and that the State failed to present evidence justifying suspension after defendant established his *prima facie* case. We affirm.

Defendant was arrested for driving under the influence of alcohol and for speeding on June 11, 1992. He was asked to come to

the Carbondale police station to take a breathalyzer test and was warned of the statutory consequences of refusing to take the test. (625 ILCS 5/11—501.1(c) (West 1992).) Defendant consented to take the breathalyzer test, but after he made several attempts to do so, the machine registered that an "insufficient sample" of air had been given. The police officer who arrested defendant determined that these attempts to take the test by the defendant were a refusal, and the officer indicated on his law enforcement sworn report that defendant had refused.

Defendant filed a request for hearing on June 18, 1992, in which he stated, among other issues not pertinent to this appeal, that the test results submitted to the Secretary of State's office were inaccurate and invalid. A transcript of that hearing has not been provided, but a bystander's report has been submitted pursuant to the supreme court rules. 137 Ill. 2d R. 323(c).

It was reported that Officer McBride was called to testify as an adverse witness by the defendant, and that he testified that on June 11, 1992, he clocked defendant going 60 miles per hour (mph) in a 45-mile-per-hour speed zone. Officer McBride stopped the defendant for speeding, and he administered field sobriety tests on defendant, which defendant failed. The officer did not recall seeing a handicapped parking sticker in the window of defendant's vehicle, but he admitted that a sticker could have been present.

Officer McBride took defendant to the police station and asked defendant to take the breathalyzer test. Defendant attempted to do so several times, but after each attempt, the machine registered that an insufficient air sample had been given. Officer McBride concluded that defendant was not "trying" and marked on his report that defendant had refused to take the test. Officer McBride stated that the Carbondale police department no longer had a policy of requesting alternate testing if a defendant does not complete a breathalyzer test, so he did not offer defendant a blood or urine test.

When Officer McBride was recalled to testify by the State, he stated that defendant told him that he felt ill and that he had been to the doctor just five days earlier. Officer McBride testified that defendant's face did not get red, that he did not sweat when he took the test, and that defendant did not exhibit any shortness of breath at that time.

Defendant testified that he is 57 years old, and that he is employed at Southern Illinois University (SIU), where he designs and makes instruments for scientific experiments. Defendant admitted

that he consented to take the breathalyzer test the night he was arrested. It was defendant's testimony that he made a good-faith effort to take the breathalyzer test, but that he was physically unable to provide a sufficient air sample to complete the test. He explained that he had had a heart condition since 1980, and that he suffers from shortness of breath on mild exertion. Also, at the time of the test, he was suffering from rectal bleeding for which he was being treated by Dr. Ahktar. He stated that he has a handicapped parking sticker from SIU so that he does not have to walk far to his work.

Daniel Rendleman, a retired police officer for SIU, and Harris Ruben, a professor at SIU, both testified that they had known defendant for several years. Both testified that they were aware that defendant had a heart condition and that defendant had a reputation for truthfulness and honesty. In addition, Rendleman corroborated that defendant had a sticker from SIU which allowed him to park in the "Handicapped Parking" areas.

The bystander's report also indicated that no testimony was presented that the breathalyzer machine was working properly or that Officer McBride administered the test in accordance with the machine's instructions. Similarly, no evidence was presented that the machine was certified by the Department of Public Health.

The court, in its well-written order, determined that the only issue presented to the court was whether defendant's actions were responsible for his failure to complete the test. In its order, the court clearly set forth that there was no evidence that the breathalyzer malfunctioned when the defendant attempted to take the test. In fact, Officer McBride testified, according to the judge's order, that he showed the defendant how to blow into the machine and that when he, being Officer McBride, blew into the machine, it gave a reading of .00. The court found that defendant failed to prove by a preponderance of the evidence that defendant was truly unable to blow into the breathalyzer and provide a sufficient sample of air volume due to health problems. Defendant appeals.

On appeal, defendant asks this court to determine whether a physical inability to complete a breathalyzer test constitutes a "refusal" within the meaning of the statute. He argues that the evidence presented was uncontradicted and established that he was physically unable to blow into the breathalyzer machine, and therefore, the court's ruling that he failed to prove he was physically unable was against the manifest weight of the evidence.

We need not address the broad general question for future cases as to whether a physical inability to complete a breathalyzer test is

a refusal under the statute, for this determination should be on a case-by-case basis. Previous case law implies that physical inability may not constitute a refusal. (See *People v. Reynolds* (1985), 132 Ill. App. 3d 559, 478 N.E.2d 33; *People v. Schuberth* (1983), 115 Ill. App. 3d 302, 450 N.E.2d 459.) However, absent a showing that the machine is not in proper working order or that a defendant is not physically able to take the test, the failure to provide the breathalyzer machine with an adequate air sample is a sufficient basis for a determination that a defendant refused to take the test. (*People v. Bates* (1987), 165 Ill. App. 3d 80, 518 N.E.2d 628.) Moreover, the statute provides that a law enforcement agency designates the type of testing to be provided a defendant, and alternate testing need not be offered. 625 ILCS 5/11—501.1(a) (West 1992); *People v. Kiss* (1984), 122 Ill. App. 3d 1056, 462 N.E.2d 546.

Thus, the immediate question presented in the case *sub judice* is whether defendant proved he was physically unable to complete the test. The law is well established that a defendant bears the burden to prove by a preponderance of the evidence that his statutory summary suspension should be rescinded. (*People v. Hawkins* (1991), 221 Ill. App. 3d 460, 582 N.E.2d 243.) Once a defendant makes a *prima facie* case, only then does the burden of proof shift to the State. (*People v. Hawkins* (1991), 221 Ill. App. 3d 460, 582 N.E.2d 243.) Here, the trial court found that defendant failed to sustain his burden of proof that he was physically unable to complete the breathalyzer test.

Defendant argues that he proved he had a physical handicap that prevented him from completing the test. He notes the testimony by defendant and his corroborating witnesses that he had a heart condition. He also notes that he suffers from shortness of breath upon mild exertion. In addition, he also has a parking sticker for work that allows him to park in the handicapped parking areas. Defendant contends that this evidence was sufficient to show his physical inability to complete the breathalyzer test. The trial court disagreed.

Defendant presented no medical testimony that his heart condition prevented him from giving an adequate air sample when a breathalyzer test is administered. He never explains, other than to state he suffers from shortness of breath on mild exertion, how this condition actually interfered on the night he was arrested. There was no evidence that he had done any "mild exertion" before the test was administered, and in fact, defendant's testimony was con-

tradicted when Officer McBride testified that defendant was not experiencing shortness of breath at the time.

We also agree with the trial court that the evidence that defendant has a handicapped parking sticker for his car was unpersuasive on the issue of whether defendant could not physically complete a breathalyzer test. It may be that defendant is justified in having a handicapped parking sticker because he cannot walk relatively long distances without becoming short of breath, but possession of such a sticker does not conclusively prove that defendant physically is unable to give a little puff into a breathalyzer machine. Thus, the court's determination that defendant's actions constituted a refusal was not against the manifest weight of the evidence. *People v. Bates* (1987), 165 Ill. App. 3d 80, 518 N.E.2d 628.

■ Defendant's second contention is that the State failed to present any evidence that the breathalyzer machine was functioning properly or that Officer McBride administered the test correctly, after he presented his *prima facie* case on his physical inability to complete the test. We need not prolong this opinion unduly, but suffice it to say, it was defendant's burden to make a *prima facie* case that the test result was inaccurate due to the machine not functioning properly or that the operator did not administer the test correctly. Only then does the burden shift to the State to lay the foundation required under the Illinois Vehicle Code. 625 ILCS 5/11—501.2(a) (West 1992); *People v. Orth* (1988), 124 Ill. 2d 326, 530 N.E.2d 210; *People v. Hamilton* (1987), 118 Ill. 2d 153, 514 N.E.2d 965.

The only way that the machine could be said to have malfunctioned was due to not receiving or registering the air, if any, that defendant blew into it. The defendant never claimed that he blew sufficient air into the machine for it to properly work. Quite to the contrary, defendant testified that he could not blow enough air into the machine for it to work properly. Besides, the State did present evidence, according to the trial judge's order via Officer McBride's testimony, that the machine worked when air was blown into it. The trial judge also noted that Officer McBride demonstrated for the defendant how he should blow into the machine. We do not know, nor does the defendant indicate, how the officer could administer the process of blowing into a tube more correctly. Even if we were to construe the evidence so that defendant had established a *prima facie* case that the breathalyzer machine malfunctioned by not registering his breath, we cannot say that the trial judge's ruling, when

considering all of the evidence, was against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

CHAPMAN, P.J., and WELCH, J., concur.