THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RONALD J. SHAFFER, Defendant-Appellee.

Third District    No. 3—93—0723

Opinion filed May 6, 1994.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Ronald L. Hamm, of Hamm & Hanna, Ltd., of Peoria, for appellee.

PRESIDING JUSTICE SLATER delivered the opinion of the court:

On July 15, 1993, the defendant, Ronald J. Shaffer, was charged with driving under the influence of alcohol (DUI). (625 ILCS 5/11—501(a)(2) (West 1992).) His driver's license was summarily suspended after he allegedly refused to submit to a breathalyzer test. (625 ILCS 5/11—501.1 (West 1992).) Subsequently, he filed a petition to rescind his statutory summary suspension, which the trial court granted. On appeal, the State contends that the trial court erred in finding that the defendant's conduct did not constitute a refusal to take the breathalyzer test, thereby rescinding the summary suspension.

At the hearing to revoke the summary suspension, Peoria County Deputy Sheriff Todd Foster testified that shortly after midnight on July 15, 1993, he received a dispatch regarding a truck parked on the roadway on West Haven Road near Route 29. He arrived at the scene and found a truck with its engine running and its lights on. He then observed the defendant, who appeared to be passed out over the steering wheel. After unsuccessful attempts to awaken him by knocking on the window, Foster opened the door, shut off the vehicle, and shook the defendant awake. According to Foster's report, the defendant had bloodshot and watery eyes, dilated pupils, slurred speech, and sluggish responses.

Foster then read the standard Warning to Motorist to the defendant and asked him to submit to a breath test. The defendant responded that he would take a blood test. Foster initially indicated that a blood test would be acceptable and called his supervisor to arrange it. In response, Foster's supervisor told him that it was not the defendant's choice to elect which test to take, that the supervisor would not approve a blood test, and that the deputy was to ask the defendant to take a breath test. Furthermore, Foster was told to tell the defendant that if he did not take a breath test it would be marked as a refusal.

Foster repeated his supervisor's remarks to the defendant and again asked him whether he would submit to a breath test. The defendant again responded that he would take a blood test. Foster then asked him if he was refusing to take the breath test, and the defendant replied, "No, I'll take a blood test." Foster informed the defendant that he would consider the defendant's answer as a refusal of the breath test.

When the transport wagon arrived, the defendant waited in it while Foster filled out the paperwork. Foster then returned to the wagon and told the defendant, *inter alia*, that he was being served with a notice of summary suspension of his driver's license that would take effect in 46 days. The defendant then said that he did not refuse anything. When Foster responded that he had refused to take a breath test, the defendant said that although he had said he would prefer to take a blood test, he would take a breath test.

The defendant's testimony was substantially the same as Foster's. However, he testified that when Foster initially asked him whether he would take the breath test, he told Foster that he would prefer to take a blood test. Also, after Foster informed him that he could not have a blood test, he responded that he would still like to take a blood test but also stated, "I ain't refusing nothing." The defendant acknowledged that Foster asked him to take the breath test more than three times, and that while the defendant was still in the squad car with him he never agreed to take the breath test. Later, after he was in the transport wagon, he realized that he was not going to get a blood test, so he told Foster he would take the breath test if he had no other choice.

At the conclusion of the hearing, the trial judge rescinded the suspension because it found the defendant had not refused the test. On appeal, the State contends that the trial court erred.

Under section 11—501.1 of the Illinois Vehicle Code, any person who drives an automobile on the Illinois highways is deemed to have consented to submit to tests to determine the alcohol level in his body if he is arrested for driving under the influence of alcohol. Refusal to submit to the test results in a suspension of the person's license to drive. (625 ILCS 5/11—501.1(d) (West 1992).) Illinois courts have consistently held that section 11—501.1 should be liberally construed to accomplish its purpose of protecting the citizens of Illinois upon the highways. *People v. Ellerbusch* (1983), 118 Ill. App. 3d 500, 454 N.E.2d 1166.

Section 11—501.1 requires that a motorist either consent to the test or refuse the test. (*People v. Myers* (1985), 130 Ill. App. 3d 681, 474 N.E.2d 923.) Therefore, a motorist's verbal "refusal to refuse"

will be construed as a refusal under the statute. (*Myers*, 130 Ill. App. 3d at 683.) Additionally, it is well established that an initial refusal to take a breathalyzer test cannot be cured by a subsequent consent by the arrestee. *People v. Graziano* (1986), 151 Ill. App. 3d 475, 502 N.E.2d 822; *People v. Myers* (1985), 130 Ill. App. 3d 681, 474 N.E.2d 923; *People v. Greenspon* (1984), 129 Ill. App. 3d 849, 473 N.E.2d 331.

In the instant case, the defendant was required under section 11—501.1 to either consent to the test offered or refuse it. His repeated answer that he would take a blood test when asked whether he would take a breath test was noncommittal and should, for the purposes of section 11—501.1, be considered a refusal. Moreover, his comment that "I ain't refusing nothing" was a "refusal to refuse." Consequently, it should also be considered a refusal. We further note that his refusals were not cured by his later consent to take the breath test. (*People v. Myers* (1985), 130 Ill. App. 3d 681, 474 N.E.2d 923.) Lastly, the fact that Foster initially assented to the defendant's request for a blood test does not change the outcome of this case. As soon as the defendant was informed that a breath test was the only available test, he should have clearly consented to the test at that point if he wanted to avoid the consequences of a refusal.

Accordingly, the judgment of the circuit court of Peoria County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

BARRY and McCUSKEY, JJ., concur.